## Combs, et al. v. Commonwealth, ex rel. State Highway Commission.

(Decided May 13, 1927.)

### Appeal from Perry Circuit Court.

1. Eminent Domain.—Evidence held to justify verdict awarding $1,000 damages to landowner in proceeding to condemn and appropriate highway right of way.

2. Eminent Domain.—Propriety of customary instructions in proceeding to condemn highway right of way is not affected by whether property sought to be condemned is through rich and rolling farming country or rough and hilly section where there is little cultivated land; application of law to varied natural conditions being properly left to local jury.

3. Eminent Domain.—Appellate court cannot say that verdict, supported by sufficient competent evidence, is flagrantly against weight of evidence, especially in condemnation proceedings where jurors went on ground under legal authority and saw things enabling them not only to estimate damages, but to understand clearly value and credibility of evidence introduced.

O'REAR, FOWLER & WALLACE, WOOTTON & WOOTON and W. W. BAKER for appellants.

JOHN E. CAMPBELL for appellee.

Opinion of the Court by Turner, Commissioner—Affirming.

This is a condemnation proceeding instituted by the commonwealth, on relation of the state highway commission, to condemn and appropriate a right of way over and through appellants' lands on Carr's fork of the Kentucky river, in Perry county.

Appellant owns 900 or 1,000 acres of land on that stream, and the right of way so condemned passed through it for 1½ or 2 miles, and after eliminating the right of way of an old county road already there, and which for a part of the way was included within the route of the new proposed highway, there was appropriated of his land about 8.8 acres.

The route as laid out and constructed included certain buildings on his place, fencing, trees, and other improvements either destroyed or damaged; it took off a part of the garden attached to his residence and a part of his front yard, and the right of way embraced a part of his front porch.

In the county court, upon exceptions, there was a verdict of $3,000 in damages, but upon appeal to the circuit court that verdict was by a jury in that court reduced to $1,000, and from a judgment on that verdict this appeal is prosecuted by the landowner.

Of the land actually taken, including that part of the garden and yard embraced in the right of way, there were about four and a small fraction of acres known and treated in the record as cultivated lands, and the balance was cliffsides and rough lands, which, appellant concedes, were of no particular value except for the timber necessarily taken in constructing the road; there was one three-room house and two small box houses that were torn down, and which had been some time theretofore erected for the purpose of housing persons engaged in logging the timber from the tract of land, and must therefore have been houses cheaply constructed for temporary purposes; there was one two-story barn, a shop, coalhouse, cellar, and one well filled up. In addition, there was a commissary or storehouse that was removed a short distance so as to take it off the right of way. There were eight apple trees and a small quantity of merchantable timber taken or cut down. It was necessary to remove for a short distance some rail and wire fencing, as well as part of an old stone wall. The evidence shows,

however, that for most of the distance the fencing was only moved back a short distance to the line of the right of way.

There are some exorbitantly extravagant valuations placed on the cultivated lands so appropriated. For instance, appellant values them at $1,000 per acre in his evidence, and undertakes to justify that valuation by stating that he had paid that price for similar lands a few miles away on that stream. On cross-examination, however, he admits that the lands so bought by him were in a mining town of several hundred population, and therefore necessarily valuable for home sites. On the contrary the evidence shows that there is no mining operation nearer than a mile or two from appellant's lands on either side, and that there is therefore no probability that his property will ever be in demand for such purposes, and it is therefore only cultivated lands in a farming locality.

Likewise, exaggerated values are placed by some of the witnesses upon the houses and other improvements either torn down or removed, and upon the fruit trees and yard trees removed.

There is, however, in the record substantial evidence by witnesses to uphold the verdict, to say nothing of the fact that the jury, under orders of the court, viewed the premises and went over the grounds, and themselves saw the situation as it existed after the road was constructed.

For instance, the county judge of the county stated that he knew the farm, especially along the road, and that he was acquainted with the value of property in the neighborhood; that part of it was valuable for pasture land, part for farming and garden purposes, and part of it for nothing; that a small part of the land taken was valuable for garden purposes, a small part for farm purposes, and some of it only for the purpose for which it was taken. He then expresses the opinion that Mr. Combs would be entitled to $1,000 in damages, and, if it was necessary for him to move his residence, not more than $200 for that. The latter statement is based upon the claim asserted by appellant that it would be necessary for him to remove his residence because of its proximity to the road, but up to the trial in the circuit court there had been no such removal, and the evidence in the record is by no means conclusive that any such removal will be necessary.

B. W. Baker, an experienced real estate man and a first cousin of appellant, states that he was acquainted with the farm and acquainted with the location of the highway and the old country road. He goes into detail as to the character of land taken at the different points in going through the farm, and shows perfect familiarity with it, and then estimates that the value of the land so taken was "not exceeding $500," and then estimates the damage to the remainder of appellant's property at $150, and says that, as appellant's house is located very close to the road now, there would be an additional damage of the cost of setting his house back from the road in order to give him a yard.

F. A. Johnson, the tax commissioner of the county, whose wife is a niece of appellant, testified that in 1925 the surface of appellant's farm of more than 1,000 acres was assessed for taxation at $5,750, or approximately $5 an acre, and that this assessment was separate and distinct from the minerals which had probably theretofore been sold or leased.

There is no complaint of the instructions given, and it is conceded that they are in the customary form, but it is said that the giving of the same was not proper under the facts of this case. We have, however, been unable to perceive any distinction in the application of the law whether the property sought to be condemned is through a rich and rolling farming country, or whether it be through a rough and hilly section where there is a little cultivated land. The application of the law to the varied natural conditions may be, and, as we think, should be left to the sound sense and judgment of a local jury. The jury in this case had before it evidence of the nature of the land taken, and the location and character of the improvements taken, given by intelligent witnesses. We do not therefore feel authorized to say when there is competent evidence sufficient to uphold the verdict that it is flagrantly against the weight of the evidence; and especially in a case of this character where the members of the jury themselves went upon the ground under authority of law and saw the things which enabled them not only to estimate the damages themselves, but further enabled them to understand clearly the value and credibility of the evidence which had been introduced before them.

The instructions of the court expressly prohibited the jury from estimating in its verdict any enhancement of the value of the land because of the building or operation of the highway, but it did authorize them to take into consideration all the advantages and disadvantages which might be reasonably anticipated to result from the prudent construction and operation of the highway over the land, and told them if they believed the disadvantages exceeded the advantages they might include in their verdict for defendant what they believed would remunerate him therefor, but that if they believed that the advantages were equal to or greater than the disadvantages, then they should find for the defendant only the direct damages for the value of the land taken.

Under these instructions, they obviously found that the land actually taken was not of greater value than $400 or $500, and that the disadvantages exceeded the advantages to the extent of the other $500 or $600.

There is competent and convincing evidence to sustain the verdict, and it is therefore affirmed.